LARRY W. LEE (State Bar No. 228175)
HOWARD L. MAGEE (State Bar No. 185199)
DANIEL H. CHANG (State Bar No. 183803)
**DIVERSITY LAW GROUP, A Professional Corporation**
444 S. Flower Street
Citigroup Center · Suite 1370
Los Angeles, California 90071
(213) 488-6555
(213) 488-6554 facsimile

SHERRY JUNG (State Bar No. 234406)
**LAW OFFICES OF SHERRY JUNG**
444 S. Flower Street
Citigroup Center · Suite 1370
Los Angeles, California 90071
(213) 488-6555
(213) 488-6554 facsimile

Attorneys for Plaintiff Stephen Song

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| STEPHEN SONG, as an individual and on behalf of all others similarly situated,<br><br>Plaintiffs,<br>vs.<br><br>KLM GROUP, INC. dba KLM ONSITE SOLUTIONS, a Pennsylvania corporation; and DOES 1 through 20, inclusive,<br>Defendants. | Case No.: 3:10-CV-03583-SC<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date: March 9, 2012<br>Time: 10:00 a.m.<br>Ctrm.: 1 – 17th Floor |

**TO THE COURT AND ALL INTERESTED PARTIES:**

**PLEASE TAKE NOTICE THAT** on March 9, 2012 at 10:00 a.m., or as soon thereafter as counsel may be heard, in the courtroom of Magistrate Judge Nandor Vadis, United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, California, Plaintiff Stephen Song, as an individual and as representative of the Class ("Plaintiff") will and hereby does respectfully move the court for final approval of the proposed class action settlement. Specifically, Plaintiff respectfully requests that the Court (1) grant final approval of this class action and class action settlement; (2) fully and finally approve and direct distribution to the Class of the settlement sum pursuant to the terms of the Class Action Settlement Agreement (hereafter "Stipulation" or "Settlement Agreement") in this matter; and (3) dismiss this action with prejudice.

This Motion is based upon this Notice of Motion and Motion for Final Approval of Class Action Settlement, the Memorandum of Points and Authorities in support thereof, the Declarations of Larry W. Lee and Sherry Jung (collectively referred to as "Class Counsel"), and the [Proposed] Order Granting Motion for Final Approval of Class Action Settlement. This Motion is also based on the pleading and papers previously filed with the Court, which include the Settlement Agreement, any oral argument of counsel, the complete files and records in the above-captioned matter, and such additional matters as the Court may consider.

DATED: February 17, 2012

DIVERSITY LAW GROUP, P.C.
LAW OFFICES OF SHERRY JUNG

By: /s/
Larry W. Lee
Attorneys for Plaintiff Stephen Song

2

**PLAINTIFF'S NTC OF MTN AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; USDC NORTHERN CASE NO. 3:10-CV-03583-SC**

**Table of Content s**

| | | Page |
|---|---|---|
| I. | INTRODUCTION AND SUMMARY OF AGREEMENT ................................ | 1 |
| II. | FACTUAL BACKGROUND ................................................................ | 1 |
| | A. History of the Case ................................................................ | 1 |
| | B. Proceedings, Discovery, and Mediation ........................................... | 2 |
| | C. Summary Settlement Terms ........................................................ | 3 |
| III. | PRELIMINARY APPROVAL OF THE SETTLEMENT AND NOTICE ............... | 3 |
| | A. Motion for Preliminary Approval .................................................... | 3 |
| | B. Notice to the Class ................................................................... | 4 |
| IV. | FINAL APPROVAL OF THE SETTLEMENT IS APPROPRIATE ...................... | 5 |
| | A. The Parties Have Given The Best Practicable Notice of the Settlement ...................................................... | 5 |
| | B. The Settlement Is Fair, Reasonable, and Adequate ........................................................................ | 6 |
| | C. The Settlement Should be Presumed Fair ...................................... | 7 |
| | D. All of the Relevant Criteria Support Final Approval of the Settlement ................................................................ | 8 |
| | 1. The Strength Of Plaintiff's Case Supports Final Approval ................................................................ | 9 |
| | 2. The Risk, Complexity, Expense And Likely Duration of Further Litigation Support Final Approval ........................ | 9 |
| | 3. The Amount of the Settlement Supports Final Approval ................................................................... | 10 |
| V. | CONCLUSION .................................................................................... | 11 |

## Table of Authorities

**Page**

**Cases**

*7-Eleven Owners for Fair Franchising v. Southland Corp.*, 85 Cal. App. 4th 1135 ........ 7

*Ackerman v. Kassar*, 1993 WL 326453 (9th Cir. 1993) ........ 6

*aff'd sub nom.*, *City of Seattle*, 955 F.2d 1268 ........ 6

*Amchem Prods. v. Windsor*, 521 U.S. 591 (1997) ........ 6

*Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979) ........ 8,9

*Byrd v. Civil Serv. Comm'n*, 459 U.S. 1217 (1983) ........ 6

*Church v. Consolidated Freightways, Inc.*, 1993 WL 149840 (N.D. Cal. 1993) ........ 6

*Dunk v. Ford Motor Co.*, 48 Cal. App. 4th 1794 (1996) ........ 7,9

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974) ........ 5

*Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd*, 661 F.2d 939 (9th Cir. 1981) ........ 7

*In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.*, MDL Docket No. 901, 1992 U.S. Dist. LEXIS 14337, at *8 (C.D. Cal. June 10, 1992) ........ 8

*In re General Motors Corp.*, 55 F.3d 768, 806 (3d Cir. 1995) ........ 9

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 720 F.Supp. 1379 (D. Ariz. 1989) ........ 6,7

*Kirkorian v. Borelli*, 695 F. Supp. 446, 451 (N.D. Cal. 1988) ........ 8

*Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998). ........ 6

*Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306 (1950) ........ 5

*Nat'l Rural Telecomms. Coop. v. Direct-TV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) ........ 8

*Officers for Justice v. Civil Serv. Comm'n.*, 688 F.2d 615, 625 (9th Cir. 1982) ........ 6,8,9,10

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985) ........ 5

*Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976) ........ 6

Statutes

California Business & Professions Code § 17200 ........ 2
California Labor Code § 226........ 2
California Labor Code § 226.7........ 2
California Labor Code § 510........ 2
California Labor Code § 512........ 2
California Labor Code § 1194........ 2
California Labor Code § 1197........ 2
California Labor Code § 2698........ 2

Treatises

*Manual for Complex Litigation Fourth* (Fed. Judicial Center 2004) ("Manual") §§ 21.6 *et seq.* at 308. ........ 6

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION AND SUMMARY OF AGREEMENT

Plaintiff STEPHEN SONG ("Plaintiff"), seeks final approval of the Settlement Agreement reached in this matter with Defendant KLM GROUP, INC. dba KLM ONSITE SOLUTIONS. The Court entered its Order preliminarily approving the Settlement on December 15, 2010 ("Preliminary Approval Order"), ECF Docket No. 65.

This Settlement is presented as the product of multiple arm's-length negotiations by experienced counsel on both sides, following significant investigation and recognition of the strengths and weaknesses of each other's positions, as well as a long and protracted review of the fairness of the current settlement. The Settlement is fair, adequate, and reasonable, and the Court should grant final approval based on (1) its terms; (2) the Preliminary Approval Order; (3) the notices given to the class members on December 15, 2011; and (4) the fact that there are no objections to the class settlement at this time; and (5) the entirety of the settlement amount will be paid out without any reversion to Defendant. Based on the foregoing, and as further detailed herein, final approval is appropriate and should be granted.

Accordingly, the parties request that the Court grant final approval of the proposed Settlement in its entirety, including Plaintiff's request for award of attorneys' fees and costs and class representative enhancement.[1]

## II. FACTUAL BACKGROUND

The factual and procedural background of this case, along with the terms of the Settlement, were set forth in detail in the Motion for Preliminary Approval filed May 10, 2011, ECF Docket No. 37. Plaintiff hereby provides a brief summary of the key points below.

### A. History Of The Case

Plaintiff filed a putative class action on behalf of himself and other current and former "independent contractors" of Defendant KLM Group, Inc. ("Defendants") on June 29, 2010 in Alameda County Superior Court. Defendant subsequently removed the case to the Northern District of

[1] Class Counsel filed their Motion for Attorney's Fees, Costs, Class Representative Enhancement and Settlement Administration costs on February 23, 2011, Docket Entry No. 71.

California. After removal of the complaint, and pursuant to stipulation by the parties, Plaintiff filed his First Amended Complaint ("FAC") on September 8, 2010, ECF Docket No. 9, and subsequently a Second Amended Complaint ("SAC") on February 3, 2011, ECF Docket No. 25. The SAC alleges the following causes of action: (1) violation of Labor Code § 1197, relating to failure to pay minimum wages, (2) violation of Labor Code §§ 510 and 1194, relating to failure to pay overtime wages, (3) violation of Labor Code § 226.7, relating to failure to provide meal breaks; (4) violation of Labor Code § 226, relating to wage statements, (5) violation of Labor Code § 2698 *et seq*., for penalties under the Private Attorney General Act ("PAGA"); and (6) unfair business practices (Business & Professions Code § 17200 et seq.).

As alleged by Plaintiff, Defendant was in the business of marketing and signing up credit card applications on behalf of various airlines (i.e., Southwest Airlines, United Air, etc…) by setting up marketing booths at different airport locations throughout California (and other states). As its business model, Defendant hired individuals to work at such marketing booths. However, such individuals were hired as "independent contractors" rather than as employees.

Plaintiff was one of the "independent contractors" that was hired by Defendant to work at one of Defendant's marketing booths. Plaintiff alleges that such classification was unlawful as such workers should have been classified as employees. Moreover, Plaintiff alleges that because of such misclassification, he and other similarly situated individuals who worked for Defendant were denied payment of minimum and overtime wages, as well as being required to work through their legally entitled meal breaks in violation of Labor Code §§ 226.7 & 512.

Defendant disputes Plaintiff's allegations and contends that the classification of Plaintiff and other class members as independent contractors was lawful.

**B. Proceedings, Discovery, and Mediation**

Subsequent to the filing of the current lawsuit, Plaintiff and Defendant agreed to participate in a settlement conference with the Court. As part of such agreement, Defendant also agreed to provide Plaintiff with a statistically significant sample of the class members' time and payroll data to allow Plaintiff to assess the potential amount of damages for purposes of the settlement conference.

Indeed, Plaintiff was provided with the requested sample, which Plaintiff's counsel reviewed in detail. As a result of such detailed analysis, Plaintiff was sufficiently prepared to discuss the case and negotiate in good faith at the settlement conference, which was held before the Hon. Laurel Beeler. While the Parties did not reach a settlement during the initial settlement conference, Judge Beeler held a subsequent settlement conference, which ultimately led to the current settlement.

**C. Summary Settlement Terms**

The conditionally certified class is defined as "all individuals who worked for Defendant in the State of California as independent contractors performing marketing and sales services from June 29, 2006 to June 10, 2011." The class is composed of 86 individuals. The Settlement provides for $55,000.00 as the total settlement amount. Pursuant to the terms of the Settlement, the Net Maximum Amount (after deduction of attorneys' fees, costs, enhancement fees, and costs of administration) will be allocated based proportionally upon the amount each Class Member was paid by Defendant for his/her independent contractor services (based on Defendant's tax form 1099 records) as compared to the total amount Defendant paid to all of the class members for their independent contractor services during the class period between June 29, 2006 to the date of the order granting preliminary approval. For example, if Defendant paid a total of $100,000 to all of the Class Members for their independent contractor services during the class period, and if Class Member John Doe was paid $1,000 total by Defendant during the class period for his independent contractor services, then Class Member John Doe would be entitled to 1% ($1000/$100,000) of the net settlement amount. (*See* Joint Stipulation of Settlement and Release filed on May 6, 2011, ECF Docket No. 36 ("Settlement") at, ¶ 6.6). This allocation is fair amongst Class Members because it provides recovery proportionate to the harm suffered.

In addition, pursuant to the terms of the Settlement, the entirety of the settlement amount will be paid out. Pursuant to the terms of the Settlement, should there be any settlement funds not claimed by any Class Member, such unclaimed funds will be paid to various charities, without any reversion to Defendant. (Settlement, ¶ 6.2.2).

## III. PRELIMINARY APPROVAL OF THE SETTLEMENT AND NOTICE

**A. Motion for Preliminary Approval**

On November 15, 2011, the Court approved Plaintiff's Order (1) Preliminarily Approving the Class Action Settlement; (2) Conditionally Certifying A Settlement Class; (3) Directing Mailing of Class Notice and Claim Form to the Class; and (4) Setting Schedule for Final Approval Process and Final Approval Hearing.

The deadline to object passed on February 13, 2012 and there have been no objections nor has any class member chosen to opt out. (Declaration of Third Party Administrator CPT Group, Inc., Abel Morales Decl. ¶¶ 11.)[2]

B. **Notice to the Class**

The Court's Preliminary Approval Order which sets forth the procedures for giving notice to class members and other matters has been fully and properly carried out pursuant to its terms.

The Preliminary Approval Order directed that the Notice of Class Action Settlement, together with the Claim Form ("Class Notice" and "Claim Form" respectively, and "Notice Packet," collectively), attached as Exhibits 1 and 2 to the Settlement, be sent to class members by first class mail within thirty (30) days of Preliminary Approval. *See* Preliminary Approval Order at ¶ 13. Defendants shall provide to the Claims Administrator with the person's name, last known address, social security number, and payroll data of each Class Member within fifteen (15) calendar days after entry of the Preliminary Approval Order. *See* Preliminary Approval Order at ¶ 12.

In compliance with the Preliminary Approval Order, on or about December 15, 2011, the Administrator sent to each class member a Notice Packet with a prepaid return envelope via First Class U.S. mail. (Morales Decl. ¶ 7). The Claims Administrator also provided toll-free telephone response service to assist class members with questions about the Notice Packet. (Morales Decl. ¶ 2).

The Claims Administrator received 19 Notice Packets returned by the Post Office with undeliverable addresses. (Morales Decl. ¶ 9). Out of the 19 Notice Packets returned, the Claims Administrator was able to perform address traces on the returned Notice Packets to locate new addresses. (Morales Decl. ¶ 9). Notice Packets promptly were re-mailed to those class members via first class mail, using the new addresses. (Morales Decl. ¶ 10). Of the Notice Packets sent to the 19 class members with new-found addresses, 8 were ultimately returned by the Post Office as being

[2] The Declaration of Abel Morales shall hereinafter be cited to as "Morales Decl. ¶ __."

undeliverable. (Morales Decl. ¶ 10). In addition, 4 Notice Packets were returned with forwarding addresses by the Post Office, all of which were promptly re-mailed to those Class Members. (Morales Decl. ¶ 9). Thus, the reasonable accuracy of the class address list is demonstrated by the fact that only 8 out of 86 class members' Notice Packets were not delivered, and the fact that the Administrator re-mailed 19 Notice Packets to Class Members with updated addresses. (Morales Decl. ¶¶ 9-10).

On or about January 13, 2012, the Administrator mailed 75 reminder postcards to class members. (Morales Decl. ¶ 8). As of this date, 34 class members have submitted Claim Forms which are deemed as valid and timely. (Morales Decl. ¶ 17).

As part of its duties, the Claims Administrator is responsible for resolving all disputes. To date, the Claims Administrator received a total of no disputes. (Morales Decl. ¶ 16).

Finally, the Claims Administrator and the parties have received zero (0) objections to the Settlement in response to the Class Notice as of today's date. (Morales Decl. ¶ 11.) Similarly, as of today's date, not a single Class Member has requested to be excluded from this Settlement. (Morales Decl. ¶ 13)

## IV. FINAL APPROVAL OF THE SETTLEMENT IS APPROPRIATE

### A. The Parties have Given the Best Practicable Notice of the Settlement

The provision of notice to class members and the administration of the notice process described above meet the requirements for the "best practicable" notice necessary to protect the due process rights of class members. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985) (provision of "best notice practicable" with description of the litigation and explanation of opt-out rights satisfies due process); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 174-75 (1974) (individual notice must be sent to class members who can be identified through reasonable means); *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) (best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections").

Therefore, the Court may proceed to determine the fairness and adequacy of the Settlement and order its approval, secure in the knowledge that all absent class members have been given the opportunity to participate fully in the claims, exclusion, and the approval process.

**B. The Settlement Is Fair, Reasonable, And Adequate**

The law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost, and rigors of formal litigation. *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976). It is for this reason that federal courts recognize the utility of settlement classes. *Amchem Prods. v. Windsor*, 521 U.S. 591, 618 (1997).

On a motion for final approval of a class action settlement under Rule 23(e), a court's inquiry is whether the settlement is "fair, adequate and reasonable." *Officers for Justice v. Civil Serv. Comm'n of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982), *cert. denied sub nom*, *Byrd v. Civil Serv. Comm'n*, 459 U.S. 1217 (1983). A settlement is fair, adequate and reasonable — and thus merits final approval — when "the interests of the class are better served by the settlement than by further litigation." *Manual for Complex Litigation Fourth* (Fed. Judicial Center 2004) ("Manual") §§ 21.6 *et seq*. at 308.

Although the Court possesses "broad discretion" in determining that a proposed class action settlement is fair, the Court's role must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned. *See Officers of Justice*, 688 F.2d at 625. Accordingly, the Court should give due regard to what is otherwise a "private consensual agreement" between the parties. *Id.*; *see also Church v. Consolidated Freightways, Inc.*, 1993 WL 149840 (N.D. Cal. 1993); *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 720 F. Supp. 1379 (D. Ariz. 1989), *aff'd subnom.*, *Chemical Bank*, 955 F.2d 1268; MANUAL § 21.61 at 309 ("The judicial role in reviewing a proposed settlement is critical, but limited to approving the proposed settlement, disapproving it, or imposing conditions on it. The judge cannot rewrite the agreement.").

A court's approval of a class action settlement will only be reversed for a clear abuse of discretion. *See Officers of Justice*, 688 F.2d at 626 ("reverse only upon a strong showing that the district court's decision was a clear abuse of discretion"); *Chemical Bank*, 955 F.2d at 1276; *Ackerman v. Kassar*, 1993 WL 326453 (9th Cir. 1993); *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998).

Here, based on their own respective independent investigations and evaluations, the Parties and their respective counsel are of the opinion that settlement for the consideration and on the terms set forth in their Settlement is fair, reasonable, and adequate and is in the best interests of the Class and the Defendants in light of all known facts and circumstances and the expenses and risks inherent in litigation. (Lee Decl. ¶ 5-9) Moreover, the Settlement was reached with the assistance of Magistrate Judge Beeler, and only after mediating this case on two separate occasions. (Lee Decl. ¶ 5). Finally, the fairness and reasonableness of the Settlement was substantially briefed in the preliminary approval motion, which the Court ultimately found to be fair and reasonable. Thus, the Settlement falls well within the range of acceptable settlements and merits approval.

**C. The Settlement Should Be Presumed Fair**

The Court should begin its analysis with a presumption that the Settlement is fair and should be approved:

> [A] presumption of fairness exists where: (1) the settlement is reached through arm's-length bargaining; (2) investigation and discovery are sufficient to allow counsel and the court to act intelligently; (3) counsel is experienced in similar litigation; and (4) the percentage of objectors is small.

*Dunk v. Ford Motor Co.*, 48 Cal. App. 4th 1794, 1802 (1996); *accord 7-Eleven Owners for Fair Franchising v. Southland Corp.*, 85 Cal. App. 4th 1135, 1146 (2000); *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd*, 661 F.2d 939 (9th Cir. 1981); *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 720 F. Supp. at 1387. All four factors are present here.

First, the Settlement was reached only after arm's-length and good-faith negotiations and two settlement conferences with Magistrate Judge Beeler. There are no indicia of collusion. (Lee Decl. ¶¶ 5-7).

Second, the parties engaged in a significant exchange of relevant data in advance of the settlement conferences. Specifically, Defendant provided Plaintiff with all of the requested information and documents, including documents pertaining to Defendant's policies, practices, and procedures, and payroll and timecard records of the putative class members for the class period. (Lee Decl. ¶ 4.) As a result of these efforts, the parties had sufficient information to evaluate the strengths and weaknesses of the class claims and defenses, whether to pursue litigation or settle, and the appropriate settlement

value for the claims at issue.

Third, Class Counsel are experienced in wage-and-hour class-action litigation, acted in good faith, and have represented their clients' best interests in reaching the Settlement. (Lee Decl. ¶¶ 21-22; Jung Decl. ¶¶ 6-9.)

> "Great weight" is accorded the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation. This is because "parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation." Thus, "the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel."

*Nat'l Rural Telecomms. Coop. v. Direct-TV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) (citations omitted); *see also In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.*, MDL Docket No. 901, 1992 U.S. Dist. LEXIS 14337, at *8 (C.D. Cal. June 10, 1992) (finding belief of counsel that proposed settlement represented most beneficial result for class to be a compelling factor in approving settlement).[3]

Fourth and finally, as of this time, not one Class Member has objected to the Settlement Agreement. This and each of the other three factors support that this settlement is entitled to a presumption of fairness.

### D. All of the Relevant Criteria Support Final Approval of the Settlement

"[T]he decision to approve or reject a settlement is committed to the sound discretion of the trial judge because he is 'exposed to the litigants, and their strategies, positions and proof.'" *Hanlon*, 150 F.3d at 1026 (citing *Officers for Justice*, 688 F.2d at 626) (affirming district court's decision to approve the settlement in consumer class action case). In deciding whether to grant final approval to a settlement as fair, reasonable, and adequate, courts consider several relevant factors:

- the strength of the plaintiff's case;
- the risk, expense, complexity and likely duration of further litigation;

---

[3] *See also Officers for Justice v. Civil Serv. Comm'n.*, 688 F.2d 615, 625 (9th Cir. 1982), *cert. denied sub nom*, *Byrd v. Civil Serv. Comm'n.*, 459 U.S. 1217 (1983); *Kirkorian v. Borelli*, 695 F. Supp. 446, 451 (N.D. Cal. 1988) (opinion of experienced counsel is entitled to considerable weight); *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979) (recommendations of Plaintiff's counsel should be given a presumption of reasonableness).

- the risk of maintaining class action status throughout the trial;
- the amount offered in settlement;
- the extent of discovery completed and the stage of the proceedings;
- the experience and views of counsel; and
- the reaction of the class members to the proposed settlement.

*See Dunk*, 48 Cal. App.4th at 1801 (citing *Officers for Justice*, 688 F.2d at 624). "The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claims advanced, the types of relief sought, and the unique facts and circumstances presented by each individual case." *Officers for Justice*, 688 F.2d at 625. All of the relevant criteria support final approval of this class action Settlement.

**1. The Strength of Plaintiff's Case Supports Final Approval.**

Plaintiff was convinced his case was strong based on the evidence received through extensive investigation. Plaintiff also believed that the matter was suitable for certification under Federal Rule of Civil Procedure 23. However, as the class size was relatively small, the overall damages would have been proportionally limited.

**2. The Risk, Complexity, Expense and Likely Duration of Further Litigation Support Final Approval.**

To assess the fairness, adequacy, and reasonableness of a class action settlement, the Court must weigh the immediacy and certainty of substantial settlement proceeds against the risks inherent in continued litigation. *See In re General Motors Corp.*, 55 F.3d 768, 806 (3d Cir. 1995) ("[T]he present value of the damages plaintiffs would likely recover if successful, appropriately discounted for the risk of not prevailing, should be compared with the amount of the proposed settlement.") (internal quotation marks and citation omitted); *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 616-17 (N.D. Cal. 1979).

This Settlement affords the class prompt and substantial relief, while avoiding significant legal and factual hurdles that otherwise may have prevented the class from obtaining any recovery at all. Class counsel are experienced and realistic, and understand that the resolution of his

claims — the outcome of class certification, trial and any attendant appeals — were inherently uncertain in terms of both outcome and duration.

Defendant vigorously contests its liability, and firmly believes that it would prevail at certification and at the trial of this case. As a consequence, there remains substantial risk that complex, costly, and protracted litigation would ensue were the parties unable to reach a settlement. Thus, the parties realize that the uncertainties of class certification as well as the merits of the claim make settlement prudent. Consideration of the expense, time, and risk associated with continued prosecution of this matter support final approval of the Settlement.

**3. The Amount of the Settlement Supports Final Approval.**

The adequacy of any Settlement must be judged as "a yielding of absolutes and an abandoning of highest hopes. . . . Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with litigation. . . ." *Officers for Justice*, 688 F.3d at 624 (citation omitted).

Defendants have agreed to pay $55,000.00 to settle this lawsuit, with the entirety of the settlement fund to be paid out. However, based on the strong defenses Defendant had to the claims in this action, Plaintiff faced the very real possibility that if they proceeded to trial, they might obtain little, if any, recovery for the class at all. In light of the uncertainties of protracted litigation, this amount reflects an excellent recovery for the class. Accordingly, the parties submit that the calculated Settlement for each participating class member is fair, reasonable, and adequate given the inherent risks and costs of litigation.

Based on this class size of 86 Class Members and the $55,000.00 recovery, Class Members will each get a raw average of approximately $550.00 after payment deduction for of attorneys' fees, enhancement payment, administration costs and litigation costs. This amount will of course vary depending on the amount of money each Class Member earned while working for Defendant. This is fair, as it directly allocates greater recovery to individual Class Members who have suffered greater harm. Furthermore, Class Members may choose to exclude themselves from this settlement and not participate in the settlement.

Although the gross recovery will be reduced due to deductions for class administration costs, attorneys' fees and any enhancement, these costs are fairly attributed as they were incurred for the benefit of the class.

The Court should further construe the lack of any objection or opt out to this current settlement as an indication that Class Members view the settlement as fair, adequate and reasonable. Based on this positive response, final approval of the current Settlement should be granted.

## IV.   CONCLUSION

For all the foregoing reasons, and on the basis of the authorities cited herein, Plaintiff respectfully submits that the standards for final approval have been met, and the terms of the Settlement Agreement are fair, adequate and reasonable.

Accordingly, Plaintiff respectfully requests that the Court enter an Order in the form proposed and submitted:

1. Granting final approval to the proposed Settlement Agreement and limited release in this action;

2. Approving distribution of the settlement funds to the class members pursuant to the terms of the Settlement Agreement; and

3. Entering final judgment as to all members of the Settlement Class in this action.

For all the foregoing reasons, and on the basis of the authorities cited herein, Plaintiff respectfully submits that the standards for final approval of Settlement have been met and that they are within the range of reasonableness and is fair, adequate and reasonable.

DATED:  February 17, 2012          DIVERSITY LAW GROUP, P.C.

By:   /s/
      Larry W. Lee
      Attorneys for Plaintiff